## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

IN RE: EEI ACQUISITION CORP.,      )    Case No. 18-13963
                                        )
                                        )
                                        )
                                        )
                                        )
        Debtors in Possession.        )    Chapter 11
                                        )
                                        )    Judge Harris

---

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDERS PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND BANKRUPTCY RULES 2002 AND 6004 (A) ESTABLISHING A HEARING DATE TO CONSIDER BIDDING PROCEDURES IN CONNECTION WITH THE DEBTOR'S SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (B) ESTABLISHING BIDDING PROCEDURES, (C) APPROVING THE FORM OF NOTICES, (D) SETTING HEARING DATE FOR THE HEARING ON APPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, AND (E) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES.**

---

EEI Acquisition Corp. (the "Debtor"), through its undersigned counsel Thomas W. Coffey and Coffey Law LLC, respectfully moves this Court for the following relief:

    a.   Entry of an Order in substantially the form attached hereto as Exhibit A (the "Bidding Procedures Order") (i) establishing bidding procedures as set forth herein with respect to the sale of substantially all of the assets of the Debtor and its affiliate, P & G Capital, LLC free and clear of liens, claims, and encumbrances; (ii) approving the form and manner of notices thereof (the "Bidding Procedures Notice") attached hereto as Exhibit B; and (iii) setting a hearing to consider approval of the proposed sale: and

    b.   Entry of an Order pursuant to sections 105(a) and 363 of the Bankruptcy Code, substantially in the form attached hereto as Exhibit C (the "Sale Order") (i) approving the proposed sale and (ii) granting related relief.

In support of this Motion, the Debtor submits the Declaration of Patrick H. Deloney, president of the Debtor, attached as Exhibit D.

## JURISDICTION, VENUE, PARTIES, AND PROCEDURAL POSTURE

1.     This case was commenced on July 3, 2018, when the Debtor and its affiliate,

P&G Capital, LLC ("P&G") each filed Voluntary Petitions for Relief under Chapter 11 of the

U.S. Bankruptcy Code.

2.     The Debtors have filed a motion to procedurally consolidate the cases of the

Debtor and P&G.

3.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

This is core proceeding under 28 U.S.C. §157(b)(2).

4.     Venue is proper in this Court under and pursuant to 28 U.S. C. §§ 1408 and 1409.

5.     The statutory predicates for the relief sought herein are sections 105(a) and 363 of

the Bankruptcy Code, and Rules 2002 and 6004 of the Bankruptcy Rules.

## BACKGROUND

6.     The Debtor and P&G (collectively, the "Debtors") continue to operate their

businesses and manage their businesses as debtors in possession pursuant to sections 1107 and

1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed

in these Chapter 11 cases.

7.     Debtor EEI Acquisition Corp. ("EEI") is engaged in the business of producing

and selling high quality large steel structures, primarily cell phone towers and utility poles and

related products. EEI operates its business from a new state-of-the-art manufacturing building

erected during the past year in Burton, Ohio, which is located in Geauga County.

8.     The manufacturing facility and real estate on which it is built are owned by P&G.

P&G is owned by Patrick H. Deloney and Gerry D. Truax, who are also the majority

shareholders of EEI.

2

9.      The economic and logistical stress of moving to the new building have been substantial for EEI. Large steel operations are inherently tied to the specifics of their factories and adjusting operations to the new space proved more difficult than anticipated. At the same time, the loans needed to pay for the building consumed significant amounts of cash generated by the business.

10.      EEI's financial stress was exacerbated by two loans it obtained from merchant cash financial companies. EEI obtained these loans to manage its financial problems, but the loans ultimately caused substantial economic damage to the operation in the form of undisclosed astronomical interest rates which exceeded the rates prohibited by Ohio's criminal usury statue, O.R.C.§2905.21 *et seq*.

11.      When EEI terminated the daily payments under the unlawful loans, both merchant cash lenders sued, which added a layer of defense costs to the already strained EEI budget.

12.      A final blow came in the form of a round of unanticipated price increases in the cost of steel raw materials used by EEI in its operations. The increases were substantial, in some cases as much as 40% to 60%, and came in response to the threat of tariffs on foreign steel issued by the current presidential administration. Worse, these increases arrived just as EEI had entered into sales transactions with customers that did not afford the opportunity to pass along the price increases to the customers.

13.      The fortunes of P&G, which engages only in the business of owning and renting the manufacturing facility, are inextricably linked to the solvency of EEI.

14.      Although EEI undertook substantial efforts to obtain addition financing, to restructure its debts outside of bankruptcy, and to seek an acquirer of the business, all were unavailing, and this case became necessary.

## THE PROPOSED SALE

15.    EEI has contacted several entities in the steel manufacturing business as potential buyers of the business. One of those companies, Mason Steel, has made a written offer to purchase, through an affiliate, substantially all assets of EEI, including, without limitation, equipment, inventory, accounts receivable, intellectual property, and other business assets, for $1,000,000, provided that bankruptcy court approval is obtained for a sale free and clear of all liens, claims, and encumbrances no later than July 31, 2018.

16.    Mason Steel has also offered to purchase, through an affiliated company, the real estate and building owned by P&G where the operations are conducted, for $1,600,000, provided that bankruptcy court approval is obtained for a sale free and clear of all liens, claims, and encumbrances no later than July 31, 2018.

17.    In the exercise of their business judgment, the Debtor's managers believe that the proposed sale of the business assets and real estate to Mason Steel and its affiliates is in the best interests of EEI, P&G, and their creditors, customers, and employees if conducted promptly. That assessment is based on the fact that cash has become so tight that operations can continue, most, for only another few weeks before operations must cease. This is true even though EEI has recently furloughed 17 of its employees.

18.    In addition, EEI believes that there is a good chance that other potential buyers will bid if the proposed bidding procedures are approved as requested, and the auction occurs quickly, while operations are still continuing. Such a sale would result in the satisfaction of as many current orders as possible by EEI, while offering potential buyers of the assets the chance to maintain operations without interruption. That is also in the best interests of EEI's employees and the community.

4

19.     Finally, EEI is dealing with very limited options because of the scarcity of operating cash. Chances of producing enough revenue from the sale to pay unsecured creditors are small, but once operations cease, those chances decline even further. EEI therefore respectfully requests that the Court issue orders implementing the relief sought herein.

<u>**LIENS, CLAIMS AND ENCUMBRANCES**</u>

20.     All of the assets of EEI are subject to a first lien and security interest in favor of Erie Bank, which has been perfected by the filing multiple UCC 1 financing statements. Erie Bank is owed approximately $2,073,568 by EEI under four promissory notes for business loans. Erie Bank is also owed approximately $3,620,000 by EEI and P&G which is secured by two mortgages on the manufacturing facility property, and those loans are also secured by the personal property of EEI. The total secured debt owed by EEI to Erie Bank is $5,693,568.

21.     The two merchant lenders who made loans to EEI are Fora Financial, LLC and National Funding, Inc.  Each of those lenders has language in its respective loan documents claiming a lien and security interest in all assets of EEI, and each has filed a UCC 1 financing statement. Neither lender has any security interest or mortgage on the assets of P&G.

22.     The Geauga County Revolving Loan Fund has a third mortgage on the manufacturing facility property owned by P&G which is inferior and subordinated to the two mortgages held by Erie Bank on that property.

23.     The relief sought by the Debtors herein is that all property be sold free and clear of all liens, claims, and encumbrances, with all liens, claims and encumbrances to attach to the sale proceeds to the same extent, order, and priority to which they attached to the sale assets.

## PROPOSED BIDDING PROCEDURES, BID PROTECTIONS, AUCTION AND OVERBID PROCEDURES

24.     The Debtor seeks approval of the following bidding procedures:

### Selecting Qualified Bidders

a.     Any potential bidder must submit a written notice of intent to bid to the Debtors or to Counsel for the Debtors no later than three days prior to the scheduled auction.

b.     The written notice of intent to bid must include financial information demonstrating to the satisfaction of the Debtors that the potential bidder is financially capable of fulfilling its payment obligations if it submits the winning bid.

c.     Each written notice of intent to bid must fully identify the bidder and any affiliate who will participate in bidding.

d.     Each written notice of intent to bid shall affirm that the proposed bidder, or the proposed bidder together with any affiliate bidder, intends to bid for the business assets owned by EEI as well as the real estate owned by P&G.

e.     The Debtors and their counsel will evaluate all written notices of intent to bid within two business days of receipt and will determine which bidders are qualified to bid ("Qualified Bidders").

f.     Any secured creditor holding an undisputed, liquidated and non-contingent secured claim shall have the right to credit bid such claims to the extent of such secured party's interest in or lien on the assets bid upon. Secured creditors whose claims are disputed, contingent or unliquidated shall not be permitted to credit bid.

g.     Provided that at least two qualified bidders are identified, the Debtors shall conduct an auction sale at the offices of the Debtors at 15175 Kinsman Road, Burton, Ohio 44062. The auction shall commence at **1:30 p.m. on July 31, 2018.** The auction shall be conducted openly and shall be transcribed by a court reporter.

### Auction Procedures

(1)     Each Qualified Bidder must appear in person through an authorized representative at the auction. Ne telephone bids will be permitted. Each Qualified Bidder must confirm on the record that any bid it submits will be a binding, good faith, and bona fide offer to purchase substantially all of the assets of EEI and of P&G if it is selected as the winning bidder.

6

(2)   If outbid, Mason Steel or its affiliates shall be entitled to a break-up fee of $40,000 to compensate it for the time, effort, and commitment of preparing and submitting the initial bid.

(3)   Bids above Mason Steel's initial bid of $2,600,000 shall commence at $2,700,000 (which includes the $40,000 break-up fee), and bids over $2,700,000 shall be in increments of at least $50,000.

(4)   The Debtors, in consultation with their counsel, shall determine which bid is the highest or otherwise best bid, and shall reject any bid the Debtors determine is inadequate or insufficient, not in conformity with these bidding procedures, or not in the best interests of the Debtors or their estates.

(5)   Within one business day after the conclusion of the auction, the Winning Bidder, as determined by the Debtors and announced at the conclusion of the auction, shall submit a deposit (the "Good Faith Deposit") in the amount of ten percent of the amount of its Winning Bid. The Good Faith Deposit shall be held in the IOLTA Account of Counsel for the Debtors until the sale is confirmed by the entry of a final sale order by the Court.

(6)   Upon entry of a final sale order by the Court, the Winning Bidder shall submit the remaining ninety per cent of the amount of its Winning Bid in certified funds payable to the Debtors.

(7)   In the event that a Winning Bidder fails to consummate its proposed transaction upon entry of a final sale order, then the Winning Bidder's Deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall be free to consummate the transaction with the next-highest bidder at the price last offered by that bidder, without the need for additional hearing or Order of the Court.

(8)   Upon payment of the final ninety per cent portion of the amount of its winning bid by the Winning Bidder, Counsel for the Debtors shall transfer the Good Faith Deposit from his IOLTA Account to the Account of EEI.

(9)   All bids shall be subject to the approval of the Bankruptcy Court and shall be conditioned upon entry of a final sale order and execution by the Winning Bidder of appropriate Asset Purchase Agreements ("APAs")

(10)  The Bankruptcy Court shall conduct a hearing to consider approval of the auction results and entry of a final sale order on **August ____, 2018 at __:___ __m.** Any objections to entry of a final sale order must in writing and filed and served on Counsel for the Debtors no later than August _____, 2018.

18-13963-aih   Doc 4   FILED 07/03/18   ENTERED 07/03/18 17:18:52   Page 7 of 37

25.    The Debtors submit that the Bidding procedures are fair and reasonable and appropriate for this case and should be approved.

26.    The Debtors believe that they have ascertained the most likely bidders for the business assets and the real estate, and have already initiated discussions with many of them. The Debtors purpose to serve notice of the Bidding Procedures Order on all of the likely potential bidders that they believe will be interested in the sale, and also intend to service notice of the Bidding Procedures Order on all secured creditors and the office of the U.S. Trustee.

27.    The Debtors submit that the foregoing notice is sufficient to provide effective notice of the Bidding Procedures, the auction and the proposed sale to potentially interested parties in a manner designed to maximize the chances of obtaining the broadest possible participation in the auction, while minimizing costs to the estate and accomplishing notice to interested parties in the very limited time available to the Debtors in this case.

## RELIEF REQUESTED AND LEGAL AUTHORITY

28.    Section 363 of the Bankruptcy Code provides for the sale, after notice in a hearing, of property of the estate other than in the ordinary course of business. 11 U.S.C. §363 (b)(1).

29.    In *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit held that the factors to be considered in determining whether a sound business reason exists include the following:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, *most importantly perhaps, whether the asset is increasing or decreasing in value.*

8

Id. at 1071 (emphasis supplied).

30. In this case, the value of the business assets and the real estate assets are decreasing as the Debtors exhaust the cash available to maintain operations. The urgency of concluding a sale while operations are ongoing precludes any realistic opportunity to accomplish a sale through a plan of reorganization. If the business assets are to continue to be used by a buyer (which is likely to produce the highest value for the estate) then the sale must be accomplished under Section 363.

31. The segment of the steel industry in which the Debtors operate, specifically the production of very large steel utility poles and cellular telephone towers, is sufficiently small that the Debtors will be able to communicate quickly and effectively with most or all of the entities who would be likely to submit bids at an auction sale. For these reasons, the Debtors believe that the proposed sale should be authorized under Section 363 of the Bankruptcy Code.

32. Section 363(f) of the Bankruptcy Code permits a Debtor to sell property of the estate:

> free and clear of any interest in such property of an entity other than the estate if (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest, (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

33. The Debtors believe that the proposed sale meets all of the requirements set forth in Section 363(f). Specifically, the Debtors believe that their primary secured creditor, Erie Bank, will consent to the sale. In addition, the interests of the merchant lenders who have claimed security interests in the business assets are in bona fide dispute in state courts in

9

California and Ohio. Moreover, the proposed aggregate sale price of the business assets and real estate is $2.6 million, far less than the $5.5 million owed to Erie Bank on its secured loans and mortgages. Under Section 506 of the Bankruptcy Code, the claims of the subordinate creditors are relegated to unsecured status and they are out of the money. Finally, specific performance is not available to any lienholder in legal or equitable proceedings, and all could be compelled to accept money in satisfaction of their interests upon redemption of the collateral.

34.    Accordingly, the Debtors believe that the proposed sale, free and clear, of all liens, claims, and encumbrances, meets the requirements of Section 363(f) of the Bankruptcy Code.

35.    Section 363(m) of the Bankruptcy Code protects a good-faith purchase's interest in property purchased from a debtor in the event that a 363 sale is later reversed or modified on appeal. The proposed purchaser of the assets in this case, like all of the potential bidders at auction, is another company in the steel industry who has negotiated vigorously with the debtor to achieve an arm's length transaction free and clear of any collusion, fraud, or attempts to take unfair advantage of other bidders. Consequently, the sale envisioned in this motion will be a sale to a good faith purchaser, entitled to the protection of Section 363(m) of the Bankruptcy Code.

36.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

18-13963-aih    Doc 4    FILED 07/03/18    ENTERED 07/03/18 17:18:52    Page 10 of 37

37. To preserve the value of the assets and limit the costs of administering and preserving the assets, it is very important that the Debtors close on the Proposed Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtors request that the Court waive the stay periods under Bankruptcy Rules 6004(g) and 6006(d)

**WHEREFORE,** the Debtors respectfully request that this Court enter Orders in substantially the form attached hereto, granting the motion and such other further relief as the Court finds just and equitable.

Respectfully submitted,

/s/ Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

Proposed Counsel for the Debtors

11

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IN RE: EEI ACQUISITION CORP., | ) | Case No. 18-13963 |
| | ) | |
| | )- | |
| | ) | |
| | ) | |
| | ) | |
| Debtor in Possession. | ) | Chapter 11 |
| | ) | |
| | ) | Judge Harris |

---

## ORDER ESTABLISHING BIDDING PROCEDURES AND RELATED RELIEF
## REGARDING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS.

---

Upon the motion (the "Motion") of Debtors EEI Acquisition Corp. and P&G Capital, LLC, for the entry of an Order (the "Bidding Procedures Order") (a) establishing bidding procedures as set forth herein (the "Bidding Procedures") with respect to the Debtors' sale of substantially all of their assets free and clear of liens, claims, and encumbrances (the "Proposed Sale"), (b) approving the form and manner of notices thereof (the "Bidding Procedures Notice") and (c) setting a hearing (the "Sale Hearing") to consider approval of the Proposed Sale, and it appearing to the Court that the Debtors have provided good and sufficient notice to interested parties, and that this Court has jurisdiction to grant the requested relief pursuant to 28 U.S.C.

EXHIBIT
A

§§ 157 and 1334, and after considering all objections, if any, and the Court having conducted a hearing on July 17, 2018 at which time the Court considered among other things, the Bidding Procedures, any objections thereto, and the oral argument of counsel, and it further appearing that the relief requested is reasonable and necessary to protect the interests of the Debtors, their estates, and creditors, it is hereby

**FOUND AND DETERMINED THAT**

A.     The statutory and legal predicates for the relief requested in this Order are sections 105 and 363 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002 and 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.     The Debtors have provided good and sufficient notice of the relief granted by this Bidding Procedures Order to all parties in interest. The notice provided is appropriate and is calculated to provide interested parties with timely and proper notice of the Bidding Procedures and the Auctions. No further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

C.     The Debtors have engaged in a process with respect to the Purchased Assets to solicit and develop the highest and best offers for the Purchased Assets.

D.     The Bidding Procedures attached hereto as **Exhibit 1** are fair, reasonable, appropriate and are designed to maximize recovery to the Debtors' estates.

E.     The Debtors have demonstrated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, and (ii) the form and manner of notice thereof, the establishment of dates and times for the Auction and Sale Hearing.

F.     The Bidding Procedures were developed in good faith and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Debtors' assets.

G.     The Bidding Procedures Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, the Sale Hearing and the Proposed Sale, and the objection deadlines related thereto.

IT IS HEREBY ORDERED THAT:

## The Bidding Procedures and Auctions

1.     The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby approved in all respects, are incorporated herein and shall apply with respect to any bids for the Assets. The Debtors are authorized to take all action necessary or appropriate to implement the Bidding Procedures.

2.     If more than one Qualified Bid is received for the assets, the Debtors shall conduct an auction sale at the offices of the Debtors at 15175 Kinsman Road, Burton, Ohio 44062. The auction shall commence at **1:30 p.m. on July 31, 2018.** The auction shall be conducted openly, and shall be transcribed by a Court Reporter.

3.     Subject to the Bidding Procedures and this Order, the Debtors shall have the right, in their reasonable business judgment, to: (i) determine which prospective bidders qualify as Qualified Bidders; (ii) determine which bids qualify as Qualified Bids; (iii) determine which Qualified Bid is the Winning Bid; (iv) reject any bid that is inadequate or insufficient, not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bidding Procedures Order or any other Order of this Court, or contrary to the best interests of the Debtors and their estates; (v) adjourn or cancel the auction; or (vi) modify the Bidding Procedures in a manner consistent with applicable law.

3

4.     All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the auction and the terms and conditions of the sale or transfer of the assets.

5.     The Court shall conduct a hearing to consider the sale on August ___, 2018 at _____ _.m.

6.     Responses or Objections, if any, to the relief requested in the Sale Motion shall be in writing and shall be filed with the Court and served upon counsel for the Debtor and the United States Trustee so as to actually be received no later than August ___, 2018.

# # # # #

# EXHIBIT 1

## BIDDING PROCEEDURES
### Selecting Qualified Bidders

a.  Any potential bidder must submit a written notice of intent to bid to the Debtors or to Counsel for the Debtors no later than three days prior to the scheduled auction.

b.  The written notice of intent to bid must include financial information demonstrating to the satisfaction of the Debtors that the potential bidder is financially capable of fulfilling its payment obligations if it submits the winning bid.

c.  Each written notice of intent to bid must fully identify the bidder and any affiliate who will participate in bidding.

d.  Each written notice of intent to bid shall affirm that the proposed bidder, or the proposed bidder together with any affiliate bidder, intends to bid for the business assets owned by EEI as well as the real estate owned by P&G.

e.  The Debtors and their counsel will evaluate all written notices of intent to bid within two business days of receipt and will determine which bidders are qualified to bid ("Qualified Bidders").

f.  Any secured creditor holding an undisputed, liquidated and non-contingent secured claim shall have the right to credit bid such claims to the extent of such secured party's interest in or lien on the assets bid upon. Secured creditors whose claims are disputed, contingent or unliquidated shall not be permitted to credit bid.

g.  Provided that at least two qualified bidders are identified, the Debtors shall conduct an auction sale at the offices of the Debtors at 15175 Kinsman Road, Burton, Ohio 44062.The auction shall commence at **1:30 p.m. on July 31, 2018.** The auction shall be conducted openly and shall be transcribed by a court reporter.

### Auction Procedures

(1)  Each Qualified Bidder must appear in person through an authorized representative at the auction. Ne telephone bids will be permitted. Each Qualified Bidder must confirm on the record that any bid it submits will be a binding, good faith, and bona fide offer to purchase substantially all of the assets of EEI and of P&G if it is selected as the winning bidder.

(2)  If outbid, Mason Steel or its affiliates shall be entitled to a break-up fee of $40,000 to compensate it for the time, effort, and commitment of preparing and submitting the initial bid.

5

(3)     Bids above Mason Steel's initial bid of $2,600,000 shall commence at $2,700,000 (which includes the $40,000 break-up fee), and bids over $2,700,000 shall be in increments of at least $50,000.

(4)     The Debtors, in consultation with their counsel, shall determine which bid is the highest or otherwise best bid, and shall reject any bid the Debtors determine is inadequate or insufficient, not in conformity with these bidding procedures, or not in the best interests of the Debtors or their estates.

(5)     Within one business day after the conclusion of the auction, the Winning Bidder, as determined by the Debtors and announced at the conclusion of the auction, shall submit a deposit (the "Good Faith Deposit") in the amount of ten percent of the amount of its Winning Bid. The Good Faith Deposit shall be held in the IOLTA Account of Counsel for the Debtors until the sale is confirmed by the entry of a final sale order by the Court.

(6)     Upon entry of a final sale order by the Court, the Winning Bidder shall submit the remaining ninety per cent of the amount of its Winning Bid in certified funds payable to the Debtors.

(7)     In the event that a Winning Bidder fails to consummate its proposed transaction upon entry of a final sale order, then the Winning Bidder's Deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall be free to consummate the transaction with the next-highest bidder at the price last offered by that bidder, without the need for additional hearing or Order of the Court.

(8)     Upon payment of the final ninety per cent portion of the amount of its winning bid by the Winning Bidder, Counsel for the Debtors shall transfer the Good Faith Deposit from his IOLTA Account to the Account of EEI.

(9)     All bids shall be subject to the approval of the Bankruptcy Court and shall be conditioned upon entry of a final sale order and execution by the Winning Bidder of appropriate Asset Purchase Agreements ("APAs").

(10)    The Bankruptcy Court shall conduct a hearing to consider approval of the auction results and entry of a final sale order on **August _____, 2018 at __:_____ __m.** Any objections to entry of a final sale order must in writing and filed and served on Counsel for the Debtors no later than August _____, 2018.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

IN RE: EEI ACQUISITION CORP.,      )     Case No. 18-13963
                           )
                           )
                           )
                           )
                           )
Debtor in Possession.          )     Chapter 11
                           )
                           )     Judge Harris

---

## NOTICE OF SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND BIDDING PROCEDURES AND AUCTIONS RELATED THERETO

---

**PLEASE TAKE NOTICE** that, on July ___, 2018, the United States Bankruptcy Court for the Northern District of Ohio (the "Court") entered an Order (the "Bidding Procedures Order") (a) establishing bidding procedures, as set forth herein (the "Bidding Procedures"), with respect to the Debtors' sale of substantially all of their assets free and clear of liens, claims, interests and encumbrances (the "Proposed Sale"), (b) approving the form and manner of notices thereof (the "Bidding Procedures Notice"), and (c) setting a hearing (the "Sale Hearing") to consider approval of the Proposed Sale).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, if more than one Qualified Bidder submits a notice of intent to bid for the assets, the Debtors shall conduct an auction sale at the offices of Debtors at 15175 Kinsman Road, Burton, Ohio 44062. The auction shall commence at **1:30 p.m. on July 31, 2018**. The auction shall be conducted openly and shall be transcribed by a Court Reporter.

**PLEASE TAKE FURTHER NOTICE** that, to qualify as a qualified bid (a "Qualified Bid") a potential bidder must submit a written notice of intent to bid to the Debtors or to



THE OHIO LEGAL BLANK CO., INC.

**EXHIBIT**

B

CLEVELAND, OHIO  44102-1799

undersigned counsel for the Debtors no later than three (3) days prior to the scheduled auction,

and must satisfy the additional requirements set forth below:

## BIDDING PROCEEDURES
### Selecting Qualified Bidders

a.   Any potential bidder must submit a written notice of intent to bid to the Debtors or Counsel for the Debtors no later than three days prior to the scheduled auction.

b.   The written notice of intent to bid must include financial information demonstrating to the satisfaction of the Debtors that the potential bidder is financially capable of fulfilling its payment obligations if it submits the winning bid.

c.   Each written notice of intent to bid must fully identify the bidder and any affiliate who will participate in bidding.

d.   Each written notice of intent to bid shall affirm that the proposed bidder, or the proposed bidder together with any affiliate bidder, intends to bid for the business assets owned by EEI as well as the real estate owned by P&G.

e.   The Debtors and their counsel will evaluate all written notices of intent to bid within two business days of receipt and will determine which bidders are qualified to bid ("Qualified Bidders").

f.   Any secured creditor holding an undisputed, liquidated and non-contingent secured claim shall have the right to credit bid such claims to the extent of such secured party's interest in or lien on the assets bid upon. Secured creditors whose claims are disputed, contingent or unliquidated shall not be permitted to credit bid.

g.   Provided that at least two qualified bidders are identified, the Debtors shall conduct an auction sale at the offices of the Debtors at 15175 Kinsman Road, Burton, Ohio 44062. The auction shall commence at **1:30 p.m. on July 31, 2018.** The auction shall be conducted openly and shall be transcribed by a court reporter.

### Auction Procedures

(1)   Each Qualified Bidder must appear in person through an authorized representative at the auction. Ne telephone bids will be permitted. Each Qualified Bidder must confirm on the record that any bid it submits will be a binding, good faith, and bona fide offer to purchase substantially all of the assets of EEI and of P&G if it is selected as the winning bidder.

2

(2)    If outbid, Mason Steel or its affiliates shall be entitled to a break-up fee of $40,000 to compensate it for the time, effort, and commitment of preparing and submitting the initial bid.

(3)    Bids above Mason Steel's initial bid of $2,600,000 shall commence at $2,700,000 (which includes the $40,000 break-up fee), and bids over $2,700,000 shall be in increments of at least $50,000.

(4)    The Debtors, in consultation with their counsel, shall determine which bid is the highest or otherwise best bid, and shall reject any bid the Debtors determine is inadequate or insufficient, not in conformity with these bidding procedures, or not in the best interests of the Debtors or their estates.

(5)    Within one business day after the conclusion of the auction, the Winning Bidder, as determined by the Debtors and announced at the conclusion of the auction, shall submit a deposit (the "Good Faith Deposit") in the amount of ten percent of the amount of its Winning Bid. The Good Faith Deposit shall be held in the IOLTA Account of Counsel for the Debtors until the sale is confirmed by the entry of a final sale order by the Court.

(6)    Upon entry of a final sale order by the Court, the Winning Bidder shall submit the remaining ninety per cent of the amount of its Winning Bid in certified funds payable to the Debtors.

(7)    In the event that a Winning Bidder fails to consummate its proposed transaction upon entry of a final sale order, then the Winning Bidder's Deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall be free to consummate the transaction with the next-highest bidder at the price last offered by that bidder, without the need for additional hearing or Order of the Court.

(8)    Upon payment of the final ninety per cent portion of the amount of its winning bid by the Winning Bidder, Counsel for the Debtors shall transfer the Good Faith Deposit from his IOLTA Account to the Account of EEI.

(9)    All bids shall be subject to the approval of the Bankruptcy Court and shall be conditioned upon entry of a final sale order and execution by the Winning Bidder of appropriate Asset Purchase Agreements ("APAs").

(10)   The Bankruptcy Court shall conduct a hearing to consider approval of the auction results and entry of a final sale order during the week of **August _____, 2018 at ___:_____ __m.** Any objections to entry of a final sale order must in writing and filed and served on Counsel for the Debtors no later than August ___, 2018.

Respectfully submitted,

/s/ Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

Proposed Counsel for the Debtors

4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IN RE: EEI ACQUISITION CORP., | ) | Case No. 18-13963 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Debtor in Possession. | ) | Chapter 11 |
| | ) | |
| | ) | Judge Harris |

---

### ORDER (A) APPROVING THE SALE
### OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND
### CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
### PURSUANT TO 11 U.S.C. § 363 (b) AND (f), (AND (B) GRANTING RELATED RELIEF

---

Upon the motion (the "Sale Motion") of EEI Acquisition Corp. and P&G Capital, LLC

(the "Debtors"), the above-captioned debtors and debtors-in-possession, for an order (the

"Order"), inter alia, pursuant to Sections 105 and 363 of the United States Bankruptcy Code (the

"Bankruptcy Code") and Bankruptcy Rules 2002, 6004 and 6006 authorizing and approving the

sale of the Purchased Assets free and clear of liens, claims and encumbrances, and the Court

having conducted a hearing on the Sale Motion on August ___, 2018 (the "Sale Hearing") and

the Court having considered the Sale Motion, all responses filed thereto, if any, as well as any



THE OHIO LEGAL BLANK CO., INC.

**EXHIBIT**

C

evidence presented at the Sale Hearing; and the Court having jurisdiction to consider and determine the Sale Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor; the Court hereby finds and determines as follows:

## General

A. The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Sale Motion are 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 6004 and 6006.

C. On July __, 2018, the Court entered the Order Establishing Bidding Procedures and Related Relief Regarding the Sale of Substantially all of the Debtors' Assets (the "Bidding Procedures Order") [Docket No. ____], establishing, among other things: (a) Bidding Procedures (as defined in the Sale Motion), including manner and form of notice to be applied during a sale of certain assets of the Debtors, (b) a date for the Auction, and (c) a date for the Sale Hearing to consider approval of the Auction results.

D. As evidenced by the certificates of service filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, and sufficient notice of the Sale Motion, the transactions contemplated therein, the Bidding Procedures Order, the Bidding Procedures, the Auction and the Sale Hearing has been timely provided to all parties in interest in accordance with Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006; (ii) such notice was good and sufficient under the circumstances; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein, the Bidding

2

Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing or the entry of this Order is required.

E.      A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to (i) counsel to any Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee"), if any is appointed; (ii) the Office of the United States Trustee; (iii) all parties who have made an offer on the Assets or expressed an interest in making an offer on the Assets; (iv) all known persons holding a lien on any of the Assets; (v) to the top 20 largest unsecured creditors and (vi) all entities who have requested notice under Bankruptcy Rule 2002 (collectively, the "Notice Parties").

## The Chapter 11 Cases

F.      On July 3, 2018 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their businesses and manage their assets as a debtors-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

## The Marketing Process

G.      Prior to the filing of the Sale Motion, the Debtors engaged in a short, but intensive process designed to canvas the market for enterprises such as those operated by the Debtors. Although compressed in time, the Debtors believe that the market of potential bidders has been substantially reached.

H.      The Debtors provided notice to all parties as required under the Bidding Procedures Order.

I.      At the Auction, the Debtors determined that the Purchaser submitted the highest and best offer for the Assets.

3

J.     The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or better offer to purchase the Purchased Assets.

K.     The Debtors and Purchaser have complied with the Bidding Procedures Order in all respects.

L.     The Notice provided that the sale of the Assets shall be free and clear of all liens, claims, interests, and other encumbrances within the meaning of 11 U.S.C. § 363(f).

M.     The Sale was negotiated, proposed, and entered into by and among Purchaser and the Debtors without collusion, in good faith, and from arm's length bargaining positions. The sale process conducted by the Debtors and their agents was non-collusive, fair and reasonable and was conducted in good faith. Neither the Debtors nor Purchaser has engaged in any conduct that would cause or permit the application of 11 U.S.C. § 363(n) to the sale, including having the Sale voided.

N.     Purchaser is a good faith purchaser in accordance with 11 U.S.C. § 363(m) and, as such, Purchaser and its assignees and designees are entitled to all of the protections afforded thereby. Absent a stay of the effectiveness of this Order, if any, Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transaction upon the entry of this Order.

O.     The terms and conditions of the Sale (i) are fair and reasonable; (ii) are valid, binding and enforceable; (iii) constitute the highest and best offer for the Assets; (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; and (v) constitute reasonably equivalent value and fair consideration for the Assets.

4

P.     The Sale will, upon consummation thereof (the "Closing"), (i) be a legal, valid, and effective transfer of the Assets by the Debtors and their estates to Purchaser with no further action required on the part of the Debtors and (ii) vest Purchaser with good title to the Assets free and clear of all liens, claims, interests and encumbrances within the meaning of 11 U.S.C. § 363(f).

Q.     The relief sought in the Sale Motion, is in the best interests of the Debtors, their estates, creditors, and all parties in interest. The Proposed Sale must be approved and consummated promptly in order to maximize the value of the Debtors' estates.

R.     Upon entry of this Order, the Debtors and their estates have good and marketable title to the Assets and all the corporate or organizational power and authority necessary to consummate the transactions contemplated by the Sale.

S.     The Debtors have demonstrated good, sound and sufficient business purpose and justification, and it is a reasonable exercise of their business judgment, to sell the Assets.

T.     The provisions of Section 363 of the Bankruptcy Code have been complied with and are applicable to the sale of the Assets.

U.     The Debtors may consummate the transactions and transfer the Assets free and clear of all liens, claims, interests, and encumbrances because one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) have been satisfied. All liens, claims, interests or encumbrances against the Assets shall attach to the proceeds of the transactions with the same validity, enforceability, priority, force and effect that they now have as against the Assets.

### ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1.     The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052,

5

made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2. The Sale Motion, to the extent not previously granted in the Bidding Procedures Order, is granted in its entirety on the terms and conditions set forth herein.

3. All parties in interest have had the opportunity to object to the relief requested by the Debtors in the Sale Motion, and to the extent that objections to the Sale Motion have not been withdrawn, waived or settled, such objections and all reservations of rights included therein are overruled on the merits. The parties who did not object, or who withdrew their objections, to the Sale Motion, are deemed to have consented to the relief set forth therein.

4. The Sale is approved in its entirety. Any APA or other agreements entered into by the Debtors and the Purchasers shall be fully enforceable by the parties thereto in accordance with and subject to its terms and conditions. The Debtors are hereby authorized to perform such actions as may be necessary to effectuate the terms of this Order.

5. The sale of the Assets is hereby approved pursuant to 11 U.S.C. §§ 105(a), 363.

6. The Debtors and Purchaser are authorized and directed, pursuant to 11 U.S.C. §§ 105(a) and 363(b), to perform all of their obligations pursuant to any APA or other agreement and to execute such other documents and take such other actions as are reasonably necessary to effectuate the Sale.

7. Upon the Closing, the Assets shall be sold, transferred or otherwise assigned to Purchaser free and clear of all liens, claims, interests and encumbrances, with all such liens,

6

claims, interests and encumbrances to attach to the proceeds of sale in the order of their priority, and with the same validity, priority, force and effect that they now have as against the Assets.

8.      The consideration to be paid by Purchaser for the Assets is fair and reasonable and may not be avoided under 11 U.S.C. § 363(n).

9.      This Order (a) is and shall be effective as a determination that, upon the Closing, all liens, claims, interests and encumbrances existing as to the Assets prior to the date of entry of this Order have been unconditionally released, discharged and terminated in each case as to the Assets and (b) is and shall be binding upon and shall govern acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchaser is the assignee of the Assets free and clear of all liens, claims, interests and encumbrances. In addition, upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions to release its liens, claims, interests or encumbrances in or on the Assets as may have been recorded or may otherwise exist.

10.     Except as otherwise provided in this Order, consummation of the transactions will not subject Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, by reason of sale, transfer or assignment of the Assets, including, without limitation, based on any theory of successor or transferee liability.

11.     Any APA and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in

7

accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

12.     Purchaser, as a purchaser in good faith, and its assignees and designees shall be entitled to the protections of 11 U.S.C. § 363(m).

13.     The provisions of this Order are self-executing and each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

14.     The Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of any APA and each of the agreements, documents and instruments executed therewith; (b) to resolve any disputes, controversies or claims arising out of or relating to the APA; and (c) to interpret, implement and enforce the provisions of this Order.

15.     The terms of this Order shall be binding on and inure to the benefit of the Debtors, Purchaser and all other parties in interest, and any successors of the Debtors, Purchaser and the Debtors' creditors, including any trustee or examiner appointed in the Chapter 11 Cases or any subsequent cases.

16.     Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(h), 6006(d), 7062 and 9014, the terms and conditions of this Order shall be effective immediately and enforceable upon its entry, and no automatic stay of execution shall apply to this Order. The Debtors and Purchaser are authorized to close immediately upon entry of this Order.

#####

8

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

IN RE: EEI ACQUISITION CORP.,    )    Case No. 18-13963
)
)
)
)
)
Debtor in Possession.    )    Chapter 11
)
)    Judge Harris

---

**DECLARATION OF PATRICK H. DELONEY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDERS PURSUANT TO 11 U.S.C. §§ 105 AND 363, AND BANKRUPTCY RULES 2002, 6004 AND 6006: (A) FIXING THE TIME, DATE AND PLACE FOR HEARING TO CONSIDER BIDDING PROCEDURES IN CONNECTION WITH THE DEBTORS' SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS; (B)(i) ESTABLISHING BIDDING PROCEDURES; (ii) APPROVING THE FORM AND MANNER OF NOTICES AND (iii) SETTING HEARING DATE FOR THE HEARING ON APPPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; AND (C)(i) APPROVING THE SALE AND ASSIGNMENT OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (ii) GRANTING RELATED RELIEF**

---

I, Patrick H. Deloney declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.    I am the President of Debtor EEI Acquisition Corp. and a member of P&G Capital, LLC, debtors and debtors-in-possession in the above-captioned cases.

2.    Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant documents and/or my opinion based upon my experience and knowledge of the Debtors' operations and financial conditions. If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, review of documents and/or opinion. I am authorized to submit this Declaration on behalf of the Debtors.

THE OHIO LEGAL BLANK CO., INC.

**EXHIBIT**
D

CLEVELAND, OHIO 44102-1799

## The Need for a Prompt Sale Process

3.     The primary reason for the filing of these Chapter 11 cases is to afford the Debtors a chance to sell the business assets of Debtor EEI Acquisition Corp ("EEI") and the real estate owned by Debtor P&G Capital, LLC ("P&G"), consisting of the manufacturing facility occupied by EEI.

4.     Significant recent events pertaining to EEI and P&G include the development and construction of the manufacturing facility, which is the state-of-the-art manufacturing building located in Geauga County. The Building was designed to accommodate the large steel component manufacturing processes of EEI, which produces high-quality heavy steel utility poles and cell towers.

5.     The construction of the building was financed with loans from Erie Bank and the Geauga County Revolving Loan Fund. The additional economic burden imposed on EEI in connection with the repayment of the loans was substantial. In addition, adapting the manufacturing processes to the new building proved more challenging than anticipated, and resulting delays in shipping finished goods and collecting accounts receivable caught the Debtor in a bind between reduced cash flow and increased expenses.

6.     In response, EEI borrowed money from two merchant cash lenders, hoping to manage its economic shortfall. These loans involved undisclosed high-rates of interest, which caused substantial additional cash flow issues. Resulting lawsuits imposed additional costs on EEI's operations.

7.     An additional significant setback for EEI occurred when the current presidential administration announced tariffs on foreign steel. Sharp increases in EEI's cost of raw materials, in some cases as much as 60% were not recoverable from EEI's customers under existing agreements, which very substantially reduced profit margins on EEI's products.

2

### The Marketing of the Assets

8.     Prior to the filing of the Sale Motion, the Debtors engaged in a short, but intensive process designed to canvas interest in firms operating in the steel manufacturing segment that may have an interest in acquiring some or all of the Debtors' assets. Although compressed in time, I believe that the market of potential bidders has been substantially reached.

9.     In response to the Debtors' efforts, three potentially interested bidders emerged as the most likely acquirers of the assets. However, continuing declines in manufacturing revenue caused one potential bidder to decline to make a stalking horse offer.

10.     Negotiations with another potential bidder produced a tentative offer, which has been reduced from the initial offer in response to declining revenue and stands at $1,000,000 for the business assets of EEI and $1,600,000 for the real estate owned P&G Capital, LLC for a total of $2,600,000. The debtors have based their proposed auction procedures on that offer.

11.     The Debtors have engaged in the process of alerting approximately twenty companies engaged in the market segment that a Bankruptcy Auction Sale is likely, and that the Debtors intend to request permission to hold the sale near the end of July. The Debtors believe that the relatively attractive pricing of the assets, especially given that the manufacturing facility is in its first year of operations, will attract maximum interest from the most likely potential buyers. The Debtors also believe that it is critical to accomplish the sale while the limited operating cash remaining will permit the sale to occur at going concern values.

I, the undersigned, declare under penalty of perjury that the foregoing is true and correct. Executed on July 3, 2018

/s/Patrick H. Deloney

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Debtor's Emergency Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105 and 363...Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, together with Notice thereof, on this 3rd day of July, 2018, as follows:

Upon the Office of the U.S. Trustee via the Court's electronic noticing system;

Upon the Holders of the 20 Largest Unsecured Claims of EEI Acquisition Corp., as listed on the attached matrix, via first class U.S. Mail, postage prepaid;

Upon Aaron M. Cole, Esq., counsel for Fora Financial and Melissa Pender, Esq., counsel for National Funding, Inc. via first class U.S, mail, postage prepaid;

Upon Erie Bank and Geauga County Revolving Loan Fund via first class U.S. mail, postage prepaid;

Upon Robert D. Barr, Esq., counsel for Gerry D. Truax and Patrick H. Deloney, via first class U.S. mail, postage prepaid.

(All at the addresses set forth on the final page of the attached matrix).


/s/Thomas W. Coffey (0046877)
Proposed Counsel for the Debtors

Beth Robinson
All-Pro Fasteners, Inc.
1916 Peyco Dr. N.,
Arlington, TX 76001


American Express Corp
PO Box 36001
Fort Lauderdale, FL 33336


Erik Kayanek
Coyote Logistic
PO Box 742636
Atlanta, GA 30374-2636


Doug Burgess
D&B Processing
9750 S. 219th E. Ave
Broken Arrow, OK 74014


Connie Schott
Delta Steel, Inc.
7355 Roundhouse Ln.
Houston, TX 77078-4528


Natalie Pitt
EDSCO Fasteners, Inc.
PO Box 671510
Dallas, TX 75267-1510


Maria Bertram
Foundation Systems & Anchors, Inc.
2300 Allen Avenue S.E.
Canton, OH 44707


Karla Kunc
General Steel Corporation
3344 EAST 80TH STREET
Cleveland, OH 44127


David Shamlian
Genergy
2 Executive Park Dr
Albany, NY 12203

Mark Betts
Hodell-Natco Industries, Inc.
PO Box 72594
Cleveland, OH 44192-0002


Susie Brockhoeft
Lent T. Deloney Co, LLC
601 Barataria Blvd
Marrero, LA 70072


JIM Miller
Mid-Atlantic Sales
3277 W Ridge Pike
Suite C-303
Pottstown, PA 19464-3422


Noah Polk
Ozark Steel
908 W. 41st St.,
Tulsa, OK 74107


Jess Yanoff
Pattern Metals, Inc
1266 E. Highland Road
Macedonia, OH 44056


Kayla Hammer
Praxair Distribution, Inc.-832
Dept CH10660
Palatine, IL 60055-0660


Kathy Jurjevic
Steel Warehouse
4005 Solutions Center
Chicago, IL 60677-4000


Clara Aslin
Structural & Steel Products, Mfg.
3001 West Pafford Street
Fort Worth, TX 76107


Amy Wolfe
Universal Steel Company
PO Box 74645
Cleveland, OH 44194-4645

Cyndi Gingrich
V&S Lebanon
153 Micro Drive
Jonestown, PA 17038

Robert Gomez
Willbanks Metals
1155 N.E. 28th St.
Fort Worth, TX 76106

Melissa Pender, Esq.
Salisian Lee LLP
550 South Hope Street
Suite 750
Los Angeles, CA 90071-2627

Aaron M. Cole, Esq.
Thomas and Thomas Attorneys
2323 Park Avenue
Cincinnati, OH 45206-2711

Mr. David Bogardus
Erie Bank
3606 State Road
Ashtabula, OH 44004

Geauga County Revolving Loan Fund
470 Center Street, Bldg. 1A
Chardon, OH 44024

Robert D. Barr, Esq.
Koehler Fitzgerald
1111 Superior Avenue East
Suite 2500
Cleveland, OH 44114